Paula MILLER, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 655, 2009.

Supreme Court of Delaware.

Submitted: May 5, 2010.
Decided: June 1, 2010.
Corrected: June 7, 2010.

Santino Ceccotti, Office of the Public Defender, Wilmington, Delaware for appellant.

Susan Dwyer Riley, Department of Justice, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, JACOBS and RIDGELY, Justices.

STEELE, Chief Justice:

Delaware State Police Officer Scott Mauchin performed an intoxilizer test on Paula Miller after she crashed into another car during the afternoon, smelled of alcohol, and failed several field sobriety tests. Miller alleges that the trial judge erroneously denied her motion to suppress the failed intoxilizer for lack of probable cause. Because the totality of the circumstances created probable cause to administer the intoxilizer, we **AFFIRM** Miller's convictions for driving under the influence of alcohol and for following a motor vehicle too closely.

## FACTUAL AND PROCEDURAL HISTORY

On December 12, 2008, at approximately 3:34 p.m., Miller drove her car into Paulette Harris's car, as Harris waited at a red light. Mauchin responded to the scene and spoke to both Miller and Harris. After approaching two to three feet from Miller, Mauchin detected a strong alcoholic odor on her breath and a glassy, watery appearance to her eyes. Mauchin noted that Miller spoke clearly, appeared orderly, and cooperated politely throughout their interaction. Miller told Mauchin that she had consumed two beers approximately two hours earlier.

Based on these observations, Mauchin decided to subject Miller to a battery of

field sobriety tests. Miller successfully recited the complete alphabet, counted backwards, and completed the finger-to-nose test. But, Miller failed the horizontal gaze nystagmus, walk-and-turn, and one-legged stand. Although Mauchin testified that Miller first denied any physical limitations or disabilities that might affect her performance, after Mauchin told Miller that she had failed the one-legged stand, Miller attributed her failure to a bad back. Finally, Mauchin gave Miller a portable breath test, which she failed.

After failing the field tests, Miller began crying and indicated to Mauchin that she had earlier DUI convictions. Mauchin took Miller into custody, and the State charged her with driving under the influence of alcohol and following too closely.

On April 13, 2009, Miller filed a motion to suppress, arguing that Mauchin lacked probable cause to arrest her or to administer a chemical test. The trial judge held a suppression hearing on July 17, 2009, and denied Miller's motion. The trial judge stated that the totality of the circumstances—the nature of the accident, time of day, alcoholic odor, watery eyes, Miller's statement that she had consumed two beers, and failed some, but not all, field tests without *ex ante* reasons to believe that Miller could not perform the tests—created probable cause to administer the blood alcohol test.

In a one-day trial, a jury found Miller guilty of driving under the influence of alcohol and following too closely. The trial

judge sentenced Miller to five years of Level V incarceration, suspended after six months for eighteen months of Level III probation for the DUI, and fined her twenty-five dollars for following too closely. Miller appeals from that judgment.

## STANDARD OF REVIEW

■■■ We review the grant or denial of a motion to suppress for abuse of discretion.[1] To the extent that we examine the trial judge's legal conclusions, we review them de novo for errors in formulating or applying legal precepts.[2] To the extent the trial judge's decision is based on factual findings, we review for whether the trial judge abused his or her discretion in determining whether sufficient evidence supported the findings and whether those findings were clearly erroneous.[3]

## ANALYSIS

■■■ We determine probable cause by the totality of the circumstances, as viewed by a reasonable police officer in the light of his or her training and experience.[4] To establish probable cause, the police need only present facts suggesting, in the totality of the circumstances, that a fair probability exists that the defendant has committed a crime.[5] "A finding of probable cause does not require the police to uncover information sufficient to prove a suspect's guilt beyond a reasonable doubt or

---

1. *Williams v. State*, 962 A.2d 210, 214 (Del. 2008); *Lopez–Vazquez v. State*, 956 A.2d 1280, 1284 (Del.2008); *Flonnory v. State*, 893 A.2d 507, 515 (Del.2006).

2. *Williams*, 962 A.2d at 214; *Lopez–Vazquez*, 956 A.2d at 1284–85; *Chavous v. State*, 953 A.2d 282, 286 n. 15 (Del.2008); *Flonnory*, 893 A.2d at 515.

3. *Williams*, 962 A.2d at 214; *Lopez–Vazquez*, 956 A.2d at 1285; *Chavous v. State*, 953 A.2d at 286 n. 15.

4. *State v. Maxwell*, 624 A.2d 926, 929–930 (Del.1993).

5. *Jarvis v. State*, 600 A.2d 38, 42–43 (Del. 1991) (citing *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

even to prove that guilt is more likely than not."[6]

Miller contends that the trial judge erred by denying her motion to suppress evidence, when he erroneously concluded that the totality of circumstances sufficiently established probable cause to test her with an intoxilizer and arrest her. Specifically, Miller asserts that the trial judge should not have given weight to the PBT, HGN, and physical agility tests when conducting the probable cause analysis; absent those, Mauchin would not have had probable cause.

■ Miller correctly asserts that the trial judge should not have included the PBT result in his probable cause analysis. Our courts have held that before admitting PBT results, the State must lay a proper foundation, by establishing that the police officer properly calibrated the PBT machine, and that the officer had been trained to operate the test.[7] The State failed to lay any foundation, on direct examination, that the officer had properly calibrated the PBT machine. On cross examination, the prosecutor asked the officer, "Are you currently aware of when the last time that particular device had been calibrated before December the 12th?" The officer responded, "No, sir."

■ Regarding the HGN evidence, we have held that "prior to the admission of HGN evidence the State must provide [a]

proper foundation ... by presenting testimony from an expert with specialized knowledge and training in HGN testing and its underlying principles...."[8] We held that the trial judge abused his discretion by admitting HGN results when the administering officer "did not testify about the standards set forth in the NHTSA training manual" or "that the [administered] test was performed in accordance with NHTSA standards."[9] Here, although Mauchin did testify about the underlying principles of the HGN test, he failed to testify about the standards in the NHTSA training manual or that he had complied with those standards. Because Mauchin did not testify as to the NHTSA standards or compliance with those standards, the trial judge erred by considering the results of these tests in his probable cause analysis.

Miller also contends that the trial judge should have attributed little to no weight to the walk-and-turn and one-legged stand tests, because she had physical limitations that affected her performances. Although Miller's purported physical limitations may have impinged on her ability to successfully perform both tasks, she only informed Mauchin of her limitations after he had conducted his examination, and after she told him that she did not have any limitations before the examination.[10]

■ Excluding the results from the PBT and HGN tests, the alcoholic odor

**6.** *Maxwell,* 624 A.2d at 930 (citing *Jarvis,* 600 A.2d at 43).

**7.** *State v. Caputo,* 1999 WL 1847363, at *2 (Del.Com.Pl. June 10, 1999) (finding that "a proper foundation was laid that the [PBT] machine was calibrated correctly; the Officer was trained to operate the test" prior to giving its results weight). *See also State v. Clay,* 2002 WL 1162300, at *3 (Del.Super. May 28, 2002) (refusing to consider PBT because "officer was unable to testify that the unit had been calibrated at all[.]").

**8.** *Zimmerman v. State,* 693 A.2d 311, 314 (Del.1997) (citing *State v. Ruthardt,* 680 A.2d 349, 351–52 (Del.Super.1996)).

**9.** *Zimmerman,* 693 A.2d at 314.

**10.** Mauchin and Miller testified differently about when Mauchin learned of Miller's limitations. The trial judge found Mauchin's testimony more persuasive.

from two or three feet away, glassy watery eyes, failed walk-and-turn and one-legged standing tests, and Miller's admission of having consumed two beers about two hours before sufficiently supported probable cause that Miller drove under the influence of alcohol. Finding probable cause on these facts comports with Delaware precedent. In *Bease v. State* we held that the commission of a traffic offense, odor of alcohol, bloodshot glassy eyes, rapid speech, and the defendant's admission to drinking alcohol were sufficient to establish probable cause.[11] In *State v. Maxwell,* we held that an accident, alcoholic odor, admitted alcohol consumption, and the defendant's dazed appearance constituted probable cause.[12]

This evidence supports the trial judge's determination that probable cause existed to test Miller with an intoxilizer and arrest her.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the Superior Court.

---

**11.** 884 A.2d 495 (Del.2005).

**12.** 624 A.2d 926 (Del.1993).